E-filing

1  Michael C. Cohen (CSB # 65487)
   Marguerite M. Malloy (CSB #197347)
2  LAW OFFICES OF MICHAEL C. COHEN
   1814 Franklin Street, Suite 900
3  Oakland, CA 94612
   Telephone: (510) 832-6436
4  Facsimile: (510) 832-6439

5

   Attorneys for Plaintiff PAUL L. GUIDRY
6

7


                    UNITED STATES DISTRICT COURT
8
                 NORTHERN DISTRICT OF CALIFORNIA
9

10

11  PAUL L. GUIDRY,                          Case No.:    C05-03960

12              Plaintiff,
                                             **COMPLAINT FOR DAMAGES**
13        v.
                                             **1) EMPLOYMENT DISCRIMINATION**
14
                                             **2) RETALIATION**
15  MARINE ENGINEERS' BENEFICIAL
    ASSOCIATION, MARINE TRANSPORT            **3) HARASSMENT**
16  LINES, INC., CROWLEY MARITIME
    CORPORATION, and DOES 1-10,              **IN VIOLATION OF TITLE VII AND**
17                                           **CALIFORNIA GOVERNMENT CODE**
                Defendants.                  **SECTION 12940 et seq.**
18
                                             **DEMAND FOR JURY TRIAL**
19

20

21

22

23

24

25

26

27

## I.   INTRODUCTION

1.   Plaintiff Paul L. Guidry ("GUIDRY") is an African American man. He filed a federal lawsuit against his labor union for unlawful discrimination in 2003. Later he was hired as an Engineer to work for American Ship Management.  The labor union interfered with his employment with American Ship Management and thereafter embarked on a campaign of harassment, discrimination based on race, and retaliation because he sued the union.  The wrongful conduct continued even after GUIDRY found other employment as Third Assistant Engineer on the Cape Horn on or about June 27, 2005.  Marine Transport Lines, Inc. and Crowley Maritime Corporation, his employers while he worked on the Cape Horn Ship, had knowledge that GUIDRY sued the labor union.  After enduring harassment and a hostile work environment on board the Cape Horn Ship, his employment was terminated on or about August 2, 2005, in retaliation for filing a lawsuit against defendant Marine Engineers' Beneficial Association ("MEBA"), and because of his race.  GUIDRY files this civil action to obtain redress and damages against defendants for harassment, hostile work environment, discrimination based on race, retaliation, and wrongful termination of his employment.

## II.   JURISDICTION

2.  Plaintiff Paul L. Guidry ("GUIDRY") filed a federal lawsuit against his labor union for unlawful discrimination in 2003. Later he was hired as an Engineer to work for American Ship Management

3.   This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, et. seq.) ("Title VII"), the California Fair Employment and Housing Act ("FEHA"), (California Government Code § 12920 et seq. and § 12940 et seq.).  The Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over all of plaintiff's remaining claims pursuant to 28 U.S.C. § 1367(a), because those claims are transactionally related to

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

1  plaintiff's claims of violation of federal law.  Since these claims arise from the same

2  common nucleus of operative facts as do the claims of violations of federal law, all

3  should be tried in one action.

### III.   VENUE

5  4.  Pursuant to 28 U.S.C § 1391(b)(2), venue is proper in this judicial district

6  because a substantial part of the events or omissions giving rise to plaintiff's claims

7  occurred in this judicial district.

### IV.   JURY TRIAL DEMANDED

9  5. Plaintiff Paul L. Guidry demands a jury trial in this action.

### V.   PARTIES

11  6.  Paul L. Guidry ("GUIDRY") is an African American male, and at all relevant

12  times was a citizen of California residing in the County of Alameda and the State of

13  California.

14  7.   On information and belief, defendant MEBA was a labor union and resides in

15  Washington, D.C.  MEBA'S principal place of business is 444 North Capitol Street, Suite

16  800, Washington, D.C. 20001.  MEBA is an employer within the meaning of Title VII

17  and FEHA.  MEBA has members in and operates a union hiring hall in San Francisco,

18  California.  MEBA is a labor organization as defined in California Government Code

19  Section 12926(g).

20  8.  On information and belief, defendant Crowley Maritime Corporation

21  ("CROWLEY") is, and at all relevant times was, a corporation organized under the laws

22  of the State of Delaware.  CROWLEY operates is business in the State of California.

23  CROWLEY'S principal place of business in California is 155 Grand Avenue, 7th Floor,

24  Oakland, California 94612.  CROWLEY is an employer within the meaning of Title VII

25  and FEHA.

26

27

9.   On information and belief, defendant Marine Transport Lines, Inc. ("MTL") is, and at all times relevant was, a corporation incorporated under the laws of the State of Delaware.  The principal place of business of MTL is 100 Lighting Way, Fl. 4, Secacus, New Jersey.  MTL is an employer within the meaning of Title VII and FEHA. CROWLEY manages vessels through its subsidiary MTL.  CROWLEY operated the Cape Horn ship through its vessels MTL.

10.  DOES 1-10 inclusive, are employees or agents of Defendants or owned or controlled by Defendants.

11. DOES 1-10 DOES 1- 10 inclusive, are "persons" which participated in the course of conduct that is the subject matter of this action, as alleged herein.

12. Except as described herein, GUIDRY is, as yet, ignorant of the true names, capacities and nature and extent of participation in the course of conduct alleged herein of the persons sued as DOES 1-10 inclusive, and therefore sue these Defendants by such fictitious names.  GUIDRY will amend this complaint to allege the true names and capacities of the DOE Defendants when ascertained.

13. CROWLEY, MEBA, and MTL, and each Defendant, including DOES 1-10, acted as the agent, joint venturer or alter ego of or for the other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

## VI. FACTS

14. Plaintiff GUIDRY is an African American male, and at all times relevant to this action, his place of employment was in the city and county of San Francisco, State of California.  GUIDRY is a member of the Marine Engineers' Beneficial Association (MEBA). GUIDRY has been a member of MEBA since 1988.

15. GUIDRY holds a Chief Engineer License from the U.S. Coast Guard License as

//

-3-

**PLAINTIFF PAUL L. GUIDRY'S COMPLAINT**

a U.S. Merchant Marine Officer. GUIDRY also holds a Chief Engineer License from the National Institute for the Uniform Licensing of Power Engineers, Inc. GUIDRY was and is qualified to work as a Chief Engineer, First Assistant Engineer/ First Engineer, Second Assistant Engineer/Second Engineer, and Third Assistant Engineer/Third Engineer.

16. MEBA is a labor union. GUIDRY is a member of MEBA.  MEBA had a duty toward GUIDRY to not harass him, retaliate against him because he filed a lawsuit against MEBA alleging discrimination, and not to discriminate against GUIDRY because of his race. MEBA breached its duty toward GUIDRY.

17. On or about November 14, 2003 GUIDRY filed a federal district court case against MEBA alleging discrimination--U.S. District Court Case No. C03-5362 JSW.

18. On or about March 2005, GUIDRY threw his Port Relief List Card for an APL one day ship job and got it.  When James Anderson (hereinafter "ANDERSON"), and business representative/agent and employee of MEBA, learned that GUIDRY had secured the job, he told GUIDRY, "Guidry you can't get that job because you cannot work for American Ship Management."  GUIDRY informed ANDERSON that he had been working for ASM since he filed.  ANDERSON then told GUIDRY, "I will call American Ship Management."  ANDERSON and MEBA called ASM and informed the company that GUIDRY had filed a lawsuit against MEBA alleging unlawful discrimination.

19. The next day, while GUIDRY was getting ready to go to work, a MEBA dispatcher – Marion Carlson- called him and left a message saying that American Ship Management ("ASM") did not want him to work for them.  GUIDRY called the dispatcher and asked what was wrong, and told the dispatcher that he had not done anything wrong.  The dispatcher replied to GUIDRY, "Ship Management just called. They said they don't want you working for them, and there is nothing I can do." GUIDRY asked the dispatcher for ASM'S phone number.  GUIDRY called the number he

-4-

received and was told that ANDERSON gave the AMS "a good reason why" GUIDRY could not work for ASM.  From that point on GUIDRY did not work for ASM.

20. After GUIDRY'S employment with ASM was interrupted and/or terminated, GUIDRY asked ANDERSON why he was trying to destroy him.  ANDERSON replied, something to the effect, "Well, man, that's what happens when you try to sue MEBA."

21. ANDERSON and MEBA did not contact ASM to notify the company of any reason that any other person who had not filed a lawsuit against MEBA could not work for the company.

22. At or around the same time ASM refused to allow GUIDRY to work for the company, it employed Dennis Clay.  ASM refused to allow GUIDRY to work for the company, but allowed Junior Engineer Dennis Clay to work for them when the company knew that Clay had failed a drug test, did not have his seaman's document, and was suspended by the U.S. Coast Guard.  Clay worked for Marine Fireman Oilers' Wipers' Union (MFOW).  Clay worked standby on American President's Line.

23. In 2002 when a fire aboard the Cape Horn ship occurred and two Merchant Marine Officers were killed, ANDERSON was the Second Assistant Engineer. The fire was caused by a leaking oil pipe that was not fixed.

24. In 2004 MEBA representative ANDERSON was a temporary Chief Engineer on the Cape Horn ship, and First Engineer R. Merell was the Second Engineer at the time when the ship broke down in the South Pacific Sea. A tug boat was required to tow the ship to the nearest port. The company lost lots of money.

25. On or about February 2005, and continuously thereafter, ANDERSON and MEBA harassed and retaliated against GUIDRY because he had filed a lawsuit against MEBA for unlawful discrimination. ANDERSON repeatedly told GUIDRY that he was going to get him.

//

-5-

**PLAINTIFF PAUL L. GUIDRY'S COMPLAINT**

26. On or about March 2005, GUIDRY was in the MEBA union hall in San Francisco, California. ANDERSON was present in the MEBA union hall at the same time GUIDRY was there. ANDERSON asked GUIDRY several times if GUIDRY had his sea time in, and threatened to demote GUIDRY to Group 3 card, if GUIDRY could not show ANDERSON that he had at least 120 days of sea time or ROS time. ANDERSON'S demands upon GUIDRY were made in an intimidating manner aimed at harassing GUIDRY.

27. On or about June 27, 2005, GUIDRY was dispatched from the MEBA union hiring hall to a job on the Cape Horn ship, located in San Francisco, California. GUIDRY was dispatched to work as a Third Engineer on the ship.

28. GUIDRY was employed by MTL for CROWLEY working on the Cape Horn ship from on or about June 27, 2005 until on or about August 2, 2005.

29. When GUIDRY arrived at the Cape Horn ship, he reported to directly to Chief Engineer T. Welty in order to report for duty. Welty told GUIDRY that he wanted an engineer, not a guy who would be sitting around in the mess hall and standing around in the halls talking about Shaquille O'Neil, Kobe Bryant, football and basketball.

30. Welty told GUIDRY that he had heard his name before. Welty asked GUIDRY if he was the guy suing "our union." GUIDRY responded that he did not want to talk about that.

31. Welty then refused to post GUIDRY'S slip on the license board along side the dispatch slips of other employees working on the Cape Horn. GUIDRY asked why Welty refused to post his slip, and Welty replied, the board was "for whites only, you won't be here long." Welty returned all portions of GUIDRY'S dispatch slip to him without retaining the portion necessary for posting. Welty told GUIDRY to report to Chief Mate Alcott. As GUIDRY left, he heard Welty say, "You want your cake and you want to eat it too."

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

32. Welty or Alcott posted the slip of second engineer Tim, a Caucasian employee of CROWLEY and MTL, who reported to the Cape Horn after the time that GUIDRY did, but on the same day GUIDRY reported for duty.  GUIDRY saw second engineer Tim's slip posted on the license board.

33. GUIDRY followed his orders and reported to Chief Mate Alcott.  GUIDRY asked Alcott to post his dispatch slip on the license board along side the other CROWLEY and MTL employees' dispatch slips as was customary and mandatory practice.  Alcott said he would not do it.

34. In June 2004, when GUIDRY had informed MEBA representative Kevin Nichols that Chief Mate Officer Alcot and the then Chief Engineer refused to post GUIDRY'S dispatch slip on the license board, he was told MEBA would do nothing about it. Within two weeks, ANDERSON replaced the ship's Chief Engineer and GUIDRY complained to him of the unfair treatment.  ANDERSON told GUIDRY there was nothing he could do, since the license board was for "whites only."  With knowledge that ANDERSON and MEBA had not addressed the discrimination he was subjected to in the past, GUIDRY knew than ANDERSON and MEBA would not do anything about the discrimination he now experienced on a different ship.

35. On or about June 29, 2005, while GUIDRY ate in the mess hall, Welty approached him.  Welty could see that GUIDRY was eating egg whites.  Welty singled GUIDRY out and looked at his plate and said, "Are you KKK?  You eating all white eggs?"  GUIDRY tried to explain my reasons for not eating egg yokes, and then left the table shortly after.

36. On or about June 30, 2005, while GUIDRY and a co-worker cleaned oil aboard the Cape Horn ship, Welty approached GUIDRY and said, he wanted the rags GUIDRY used (to clean the oil) to look like James Brown and not like Michael Jackson.  GUIDRY asked Welty why he made the remark, and Welty said something to the effect, that he

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

1    did not want the rags to be black and white, only black like James Brown.  GUIDRY'S

2    co-worker, who was present, laughed.

3         37. On one occasion, GUIDRY used the laundry room on board the Cape Horn

4    ship that was used by officers, to wash his oil and soil stained work clothes.  On that

5    occasion, GUIDRY made sure that he used the laundry room when Welty was not

6    aboard the ship.  On another occasion GUIDRY carried his soiled work clothes in his

7    arms while walking to the officers' laundry room to wash his clothes.  Welty

8    approached GUIDRY as GUIDRY walked down the hall approaching the laundry room.

9    Welty looked at GUIDRY and the clothes he carried and angrily barked, something to

10    the effect, Where are you going?  GUIDRY quickly tried to think of something to say

11    because Welty's tone, manner, and body language were a clear statement that Welty

12    knew that GUIDRY was headed for the laundry room.  Welty was making it clear that

13    GUIDRY could not use the officers' laundry.  GUIDRY made up an explanation for his

14    presence and walked away.  GUIDRY did not use the officers' laundry that day.

15         38. On or about July 13, 2005, GUIDRY used the crew laundry to wash his soil

16    stained work clothes.  Chief Electrician Bedard approached GUIDRY and shouted,

17    "Motherfucker nigger, get your clothes out of the crew washer machine or I will throw

18    them over the side."  GUIDRY saw Welty in the hall overhearing Bedard's remark and

19    Welty was laughing.

20         39. Approximately 10 minutes after Bedard blew up at GUIDRY, Welty

21    approached GUIDRY and pointed his finger in GUIDRY'S face and said, "I should fire

22    you for using crew laundry." GUIDRY apologized and told him that Bedard called him a

23    "nigger."  Welty replied that he would do the same if somebody used his washing

24    machine.

25         40. GUIDRY saw Second Engineer Tim use the officers' laundry room without

26    recourse from any person.

27

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

41. On a daily basis while GUIDRY worked on the Cape Horn ship, First Engineer Merell subjected GUIDRY to taunting and interrogation about why he sued or why he was suing the union. GUIDRY repeatedly told Merell that he did not want to talk about that.

42. On a daily basis, while GUIDRY worked on the Cape Horn ship, he was forced to hear conversations between Welty, Merell, and others that degraded Mexicans, Asians, and African Americans.

43. On at least one occasion, while GUIDRY was required to sleep on board the Cape Horn ship, he was awakened by violent pounding on the door where he slept. GUIDRY was startled and awoke quickly.  He checked the door to find what or who caused the violent disruption and found no on there.

44. On or about July 18, 2005, ANDERSON told GUIDRY that he was going to get GUIDRY because GUIDRY sued MEBA.

45. On the Cape Horn ship, First Engineer R. Merell required GUIDRY to go inside a tank to clean out the tank without a respirator mask on.  GUIDRY could have suffered serious or fatal injury a result of following the direct orders of Merell, and being forced to ignore commonly practiced safety measures.

46. The U.S. Coast Guard rules require that oil spills be logged in an oil record book. In 2005, after an oil spill First Engineer Merell only initialed his name after the Cape Horn had an oil spill on his watch in Washington State. In July 2005, the U.S. Coast Guard inspected the Cape Horn and raised the question as to why First Engineer Merell initialed his name instead of signing it.

47. In 2005, Welty and Merell let the diesel generator over-speed and it blew up into pieces.  GUIDRY noticed all the steam traps full of oil, from leaking coils in the fuel oil and lube oil heaters.  Welty and Merell did not fix it.  It will cost $500,000 or more to replace the diesel generator.

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

48. Merell required GUIDRY to change oil under a forklift without providing GUIDRY the necessary tools/equipment to perform his job.  When GUIDRY attempted to create safer working conditions by getting the forklift lifted off the floor to allow him to get under the forklift to change the oil, Merell stopped him.  GUIDRY was required to perform the oil change in tight and dark space, in an unsafe manner.

49. Non-African American employees of MTL and CROWLEY working on the Cape Horn ship were not required to put their health and safety at risk to perform job duties.  Non African American employees of MTL and CROWLEY working on the Cape Horn ship were provided the tools and equipment they needed to efficiently and safely perform their job duties.

50. Employees of MTL and CROWLEY who had not filed a lawsuit against MEBA were not required to put their health and safety at risk to perform job duties.

51. Employees of MTL and CROWLEY who had not filed a lawsuit against MEBA were provided the tools and equipment they needed to efficiently and safely perform their job duties.

52. On a daily basis, while GUIDRY worked on the Cape Horn ship, Merell told GUIDRY that he should not be working for the MEBA and that they should kick GUIDRY out of the union for filing a lawsuit against the MEBA.

53. In July 2005, Welty allowed Chief Electrician Eugene T. Bedard's wife to stay on the Cape Horn ship for five days.  I asked Welty if I would be allowed to have an overnight guest on board Cape Horn, and Welty replied, "You can't compare a white man with a black man."

54. On or about July 27, 2005, Welty refused to let GUIDRY look at a safety video as required by the company.  The videos pertain to policies relating to discrimination, and safety issues.

//

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

55. On or about August 2, 2005, while on the Cape Horn ship, GVA Albert knocked on GUIDRY'S door to ask GUIDRY if he had any joint pain relief medicine and then told him that Chief Engineer Welty asked him to lie and say that he saw GUIDRY start and move the forklift.  GVA Albert told GUIDRY that when he refused, Welty told GVA Albert that he would be sorry.

56. Although GUIDRY never received any discipline due to his work performance, on or about August 2, 2005, he was called into the Chief Mate's office on board the Cape Horn ship.  When GUIDRY arrived in the office, ANDERSON was seated there. Welty accused GUIDRY of starting the forklift with knowledge that the forklift did not have oil in it.  Welty accused GUIDRY of lying about his denial of starting the forklift without oil in it.  Welty told GUIDRY that he had statements from employees on board the Cape Horn ship that contradicted GUIDRY'S denial of starting the forklift's engine. While Welty accused GUIDRY, ANDERSON kept saying, "I believe you Chief, Guidry has to go!"

57. GUIDRY'S employment with MTL and CROWLEY was terminated effective on or about August 2, 2005.  MTL and CROWLEY intentionally published false statements about the reason for plaintiff's discharge to third persons.  MTL and CROWLEY'S discharge of plaintiff, and the manner in which they accomplished it was outrageous, and done in bad faith.

58. On or about August 8, 2005, when GUIDRY appeared in the San Francisco, California office of MEBA to file a grievance concerning his unfair and unlawful termination.  It was customary and ordinary business practice for a grievant to submit a completed grievance form to the MEBA union hall, so that a MEBA union representative can sign and date the form demonstrating receipt of the grievance (logging it in), and the grievant to receive a copy of the signed and dated grievance form.  This is customary and ordinary practice because all grievances must be

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

submitted to MEBA in a timely manner in order to comply with the terms of the

collective bargaining agreement for consideration by the union.

59. On or about August 8, 2005, when GUIDRY submitted a completed standard

MEBA grievance form to the MEBA Patrolman (to be logged in) at the MEBA union hall,

the Patrolman told GUIDRY that ANDERSON was assigned to investigate the grievance.

ANDERSON was present in the MEBA union hall, and called GUIDRY over to him.

When GUIDRY walked over to ANDERSON, ANDERSON said, he was not worried about

GUIDRY because he had not completed his sixty day probation.  ANDERSON added

that "we" have a witness against you, but the "wet back" can't write.  ANDERSON told

GUIDRY "We are going to get you."

60. GUIDRY'S attorney wrote to ANDERSON requesting that the grievance

GUIDRY filed on or about August 8, 2005 be recorded as being timely filed, and

ANDERSON called GUIDRY'S attorney and said that he told GUIDRY that he would not

sign the grievance form until he had investigated it.  As of date, GUIDRY has not

received a signed/logged in grievance form MEBA and ANDERSON.

61. ANDERSON and MEBA have not informed any non African American member

of MEBA that their grievance form will not be signed (effectively logged in) until after it

has been investigated.

62. ANDERSON and MEBA have not informed any member of MEBA who has not

filed a lawsuit against MEBA that their grievance form will not be signed (effectively

logged in) until after it has been investigated.

63. ANDERSON and MEBA have solicited evidence and/or documents to support

discipline or termination of any other non African American union member.

64.      ANDERSON and MEBA have not solicited evidence and/or documents to

support discipline or termination of any union member that has not filed a lawsuit

against MEBA.

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

65. On or about August 2, 2005, and continuously thereafter, CROWLEY and MTL created a hostile work environment, harassed, discharged, terminated, failed and refused to rehire, otherwise discriminated against GUIDRY because of his race, and retaliated against him because he filed a lawsuit against MEBA alleging unlawful discrimination.  On or about August 2, 2005, MTL and CROWLEY discharged plaintiff without good cause, and confirmed and ratified the discharge.

66. MTL, CROWLEY, MEBA, and ASM had knowledge that GUIDRY filed a lawsuit against MEBA alleging unlawful discrimination.

67. The acts of the defendants, and each of them, have caused GUIDRY to be permanently and irreparably harmed and damaged and cost him wages, and deprived him of employee benefits, by and through their interference with his opportunities for employment and wrongful termination.

68. The acts of the defendants, and each of them, have caused GUIDRY to sustain severe and continuous emotional and mental distress, to his general damage.

69. The defendants, and each of them, engaged in willful conduct with the aim of harassing plaintiff, creating a hostile work environment, and causing plaintiff damage. The malicious acts of defendants, and each of them, were designed to injure GUIDRY, and to intimidate him and coerce other employees of defendants so as to fabricate good cause to terminate plaintiff.

70. Defendants, and each of them, with knowledge of the unlawful conduct alleged herein, knew or should have known that its employees, and or managerial employees were harassing, creating a hostile work environment, discriminating against and retaliating against plaintiff because he filed a lawsuit against MEBA and/or because of his race.

71. Defendants treated plaintiff differently than it treated its non African American employees, and employees who did not file a lawsuit against MEBA.

-13-

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

72. Defendants treated plaintiff differently than it treated its non African American union members, and union members who did not file a lawsuit against MEBA.

73. Defendants do not have a legitimate business reason for harassing, creating a hostile work environment, discriminating and retaliating against plaintiff. The actual reason defendant created a hostile work environment, harassed, terminated, and retaliated against plaintiff is because of plaintiff's race and because he sued MEBA.

74. Defendants, and each of them failed to take all reasonable action to stop and prevent harassment, discrimination and/or retaliation from occurring toward plaintiff.

75. Defendants failed to take all immediate and appropriate corrective action to remedy the hostile work environment, harassment, retaliation, and unlawful discrimination against plaintiff.

76. The conduct of defendants, and each of them alleged herein was willful, wanton, malicious, and oppressive, in that they knew or should have known that their conduct was unreasonable and illegal.

77. Defendants MEBA, CROWLEY and MTL, despite knowledge and adequate opportunity to learn of the misconduct of its employees, agents, and representatives, retained said defendants, agents, and employees in its service, and thereafter adopted, approved and ratified the acts, omissions, and misconduct of said defendants.

78. Furthermore, defendants' acts were carried out in willful and conscious disregard of plaintiff's rights and well-being such as to constitute malicious, despicable conduct within the meaning of California Civil Code section 3294, entitling plaintiff to punitive damages in an amount appropriate to punish or make an example of defendants.

79. Beginning in August 2005, GUIDRY protested the retaliation and harassment he was subjected to and his unlawful termination, and filed timely charges of

-14-

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

harassment, retaliation, and discrimination with the U.S. Equal Employment Opportunity Commission at 1301 Clay Street, Oakland, California, and the State of California Department of Fair Employment and Housing, at 1515 Clay Street, Oakland, California.  GUIDRY obtained Right To Sue Letters from both agencies.  DFEH Notices of Case Closure and copies of his DFEH complaints were timely served on defendants by certified mail in September 2005.

80. GUIDRY obtained Right To Sue Letters from EEOC on August 11, and 23, 2005, and September 9, and 15, 2005.  GUIDRY has exhausted his administrative remedies.

WHEREFORE, Plaintiff prays for relief as set forth below:

## **FIRST CAUSE OF ACTION**
(Race Discrimination --Violation of Title VII and FEHA)
(against CROWLEY and MTL)

81. GUIDRY incorporates by reference and reallege paragraphs 1 through 80, above, as though fully set forth herein.

82. Plaintiff was made to endure verbal and physical harassment directed toward him because of his race.

83. Plaintiff was treated differently than non African American employees and was told the reason for the treatment was his race.

84. Defendants discharged Plaintiff because of his race.

85. The acts plaintiff allege violate Title VII and FEHA.

86. As a direct, proximate, and foreseeable result of the acts alleged above, GUIDRY suffered and continues to suffer substantial loss in earnings and other employment benefits, disappointment, worry, anger, embarrassment, humiliation, severe mental anguish, emotional and physical distress, sleeplessness, upset, frustration, anxiety, and economic loss, all to the Plaintiff's damage.

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

87. As a result of defendants' actions, GUIDRY has been injured and suffered damages in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for relief as set forth below:

## SECOND CAUSE OF ACTION
(Retaliation- Violation of Title VII and FEHA)
(Against All Defendants )

88. GUIDRY incorporates by reference and reallege paragraphs 1 through 87 above, as though fully set forth herein.

89. After Plaintiff filed a lawsuit against the union, he was made to endure verbal and physical harassment, daily interrogation, intimidation, threats, and taunts because he exercised his rights to complain (and file a lawsuit) alleging unlawful discrimination.

90. After GUIDRY filed a lawsuit against the union, defendants forced him off a job, having his employment with American Ship Management terminated.  After he filed a lawsuit against the union, defendants relegated GUIDRY to a second class membership status by repeatedly threatening him with termination, announcing he was not entitled to fair and equal representation, and failing to represent him at the meeting during which he was terminated.  Defendants refused to log in GUIDRY'S grievance about the termination until after they completed an investigation of GUIDRY'S claims.

91. Plaintiff was treated differently than employees and was told the reason for the treatment was because he filed a lawsuit against the union.

92. Defendants discharged Plaintiff because of he filed a lawsuit against MEBA.

93. Defendants', and each of them, conduct violate Title VII and FEHA.

94. As a direct, proximate, and foreseeable result of the acts alleged above, GUIDRY suffered and continues to suffer substantial loss in earnings and other employment benefits, disappointment, worry, anger, embarrassment, humiliation,

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

1  severe mental anguish, emotional and physical distress, sleeplessness, upset,

2  frustration, anxiety, and economic loss, all to the Plaintiff's damage.

3      95. As a result of defendants' actions, GUIDRY has been injured and suffered

4  damages in an amount according to proof at trial.

5      WHEREFORE, Plaintiff prays for relief as set forth below:

6                      **THIRD CAUSE OF ACTION**
        (Harassment and Hostile Work Environment- Violation of Title VII and FEHA)

7                        (against All Defendants)

8      96. GUIDRY incorporates by reference and reallege paragraphs 1 through 95

9  above, as though fully set forth herein.

10     97. Defendants in doing the acts complained of herein created an abusive

11  atmosphere, hostile environment, and intolerable and unfair conditions for GUIDRY.

12     98. Defendants in doing the acts complained of herein and/or by failing to take all

13  reasonable action to prevent the harassment from occurring, violated FEHA and Title

14  VII.

15     99. Defendants in doing the acts complained of herein and/or by failing to take all

16  reasonable action to promptly correct the hostile work environment, and correct any

17  harassing behavior, violated FEHA and Title VII.

18     100.    Defendants in doing the acts complained of herein and/or by failing to

19  take all reasonable action to stop the harassment from occurring, violated FEHA and

20  Title VII.

21     101.    Defendants' conduct, alleged herein directly, legally, and proximately

22  caused GUIDRY to be permanently and irreparably harmed and damaged, and caused

23  him to suffer emotional and mental distress, severe emotional and mental distress, loss

24  of wages and income, employee benefits, incur related and incidental expenses, all to

25  plaintiff's damage, the amount of which will be proved at trial.

26     WHEREFORE, Plaintiff prays for relief as set forth below:

27

-17-

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

## FOURTH CAUSE OF ACTION
(Interference with Prospective Economic Relations)
(against MEBA)

102.   GUIDRY incorporates by reference and reallege paragraphs 1 through 101 above, as though fully set forth herein.

103.   With knowledge of GUIDRY'S employment with American Ship Management, and knowledge of the probability of future economic benefit to GUIDRY, Defendant intentionally disrupted GUIDRY'S employment relationship. Defendant induced a third party or parties not to continue an employment relationship with GUIDRY.

104.   With knowledge of GUIDRY'S employment with MTL and CROWLEY, and knowledge of the probability of future economic benefit to GUIDRY, Defendant conspired to and intentionally disrupted GUIDRY'S employment relationship.

105.   Defendant intentionally, maliciously, or with conscious disregard for their act, interfered with GUIDRY'S right to pursue a legitimate occupation and conduct business in accordance with his own plan.

106.   Defendant's conduct, alleged herein directly, legally, and proximately caused GUIDRY to be permanently and irreparably harmed and damaged, and caused him to suffer emotional and mental distress, severe emotional and mental distress, loss of wages and income, employee benefits, incur related and incidental expenses, all to plaintiff's damage, the amount of which will be proved at trial.

WHEREFORE, Plaintiff prays for relief as set forth below:

## FIFTH CAUSE OF ACTION
(Wrongful Termination in Violation of Public Policy)
(against MTL and CROWLEY)

107.   GUIDRY incorporates by reference and realleges paragraphs 1 through 106 above, as though fully set forth herein.

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

108.   GUIDRY'S employment with MTL and CROWLEY was terminated as a result of the defendants' violation of federal and state public policies prohibiting retaliation for exercise of plaintiff's right to bring a lawsuit alleging discrimination.

109.   GUIDRY'S employment with MTL and CROWLEY was terminated as a result of the defendants' violation of the federal and state laws establishing discrimination based on race as unlawful.

110.   GUIDRY'S employment with MTL and CROWLEY was terminated as a result of the defendants' violation of federal and state laws prohibiting unlawful harassment on the basis race or in retaliation for filing a lawsuit alleging discrimination.

111.   Defendants' actions alleged herein have been willful, malicious, oppressive, unfair, and in conscious disregard of plaintiff's rights, feelings, and interests.  These acts, which resulted in plaintiff's wrongful termination in violation of long established public policy, were obnoxious, despicable, and ought not to be suffered by any member of the community.  Therefore, plaintiff is entitled to an award of punitive damages.

112.   All actions of defendants, their employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of defendants, and each of them. Therefore, GUIDRY is entitled to punitive or exemplary damages against defendants, in an amount to be determined at the time of trial.

113.   As a direct, proximate, and foreseeable result of the acts alleged above, GUIDRY suffered and continues to suffer substantial loss in earnings and other employment benefits, disappointment, worry, anger, embarrassment, humiliation, severe mental anguish, emotional and physical distress, sleeplessness, upset, frustration, anxiety, and economic loss, all to his further damage according to proof.

//

-19-

114.    As a further direct and proximate result of defendants' conduct GUIDRY has been required to hire an attorney and incur legal costs and expenses, all to his damage according to proof at trial.

WHEREFORE, Plaintiff prays for relief as set forth below:

### SIXTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)
(against All Defendants)

115.    GUIDRY incorporates by reference and realleges paragraphs 1 through 114 above, as though fully set forth herein.

116.    Defendants' acts of harassment, retaliation, discrimination against GUIDRY because he filed a lawsuit against MEBA and/or because of his race, and interference with his employment relationships were intentional and designed to injure plaintiff, to create hardship for him, and to intimidate plaintiff.  Defendants' conduct was based on unlawful motives, and in violation of federal and state laws.  Defendants' acts were evil and malicious, and the manner in which they accomplished it was outrageous.

117.    Defendants' conduct was intended to cause plaintiff severe emotional distress, or acted with reckless disregard of the possibility of causing plaintiff severe emotional distress.

118.    Defendants' conduct caused plaintiff to be without employment, income, sense of self worth, and security derived from his employment.  Defendants' conduct toward plaintiff was outrageous, and it directly, legally, and proximately caused plaintiff to suffer and continue to suffer severe mental and emotional distress.

WHEREFORE, Plaintiff prays for relief as set forth below:

//

//

//

-20-

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

## SEVENTH CAUSE OF ACTION
(Negligence)
(against All Defendants)

119.   GUIDRY incorporates by reference and realleges paragraphs 1 through 118 above, as though fully set forth herein.

120.   Defendants owed GUIDRY a duty not perform their supervisory responsibilities and not to provide union representation towards him negligently. Defendants owed GUIDRY a duty not to negligently hire or retain supervisory employees and union representatives/agents who would improperly supervise GUIDRY, create a hostile work environment, harass, discriminate against, retaliate against GUIDRY.  Defendants owed GUIDRY a duty not to negligently provide union representation for GUIDRY because he filed a lawsuit against the union, and/or because of his race.

121.   Defendants owed GUIDRY this duty by virtue of the employment relationship and/or the union membership relationship with him and the nature of these relationships, by virtue of the representations made to GUIDRY whereby he was placed in a manifestly vulnerable position, and by virtue of the agreement not to create a hostile work environment, harass, discriminate and retaliate against, and discharge plaintiff without good cause.

122.   It was foreseeable, when GUIDRY was induced to enter into the employment relationship and union membership, and throughout GUIDRY's employment and union membership, that negligent performance by any of these defendants of their responsibilities in the employment relationship and union representation would be substantially certain to cause GUIDRY severe injury, both financial and emotional. Further, these defendants occupied a position of trust towards plaintiff and of superior knowledge, and knew that they occupied such a position.

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

123.   Defendants breached their duties toward GUIDRY.

124.   GUIDRY suffered damages legally caused by these defendants' negligence as stated below, which is incorporated here to the extent pertinent as if set forth here in full.

WHEREFORE, Plaintiff prays for relief as set forth below:

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1.   For compensatory and special damages, including damages for mental and emotional distress, in an amount to be determined at trial;

2.   For general damages according to proof;

3.   For lost income, past, and future;

4.   For back pay according to proof;

5.   For front pay according to proof;

6.   For medical and related expenses according to proof;

7.   For lost earnings, past and future, according to proof;

8.   For attorney fees;

9.   For prejudgment interest at the legal rate on the amount of plaintiff's lost wages and employment benefits;

10.   For interest and costs of suit herein incurred; and

11.   For such other and further relief as the court may deem proper.

Dated: September29, 2005          LAW OFFICES OF MICHAEL C. COHEN

By: _____

MARGUERITE M. MALLOY
Attorneys for Plaintiff PAUL L. GUIDRY

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT

1

2
## DEMAND FOR JURY TRIAL

3
Plaintiff demands a trial of this matter by a jury.

4
Dated: September 29, 2005          LAW OFFICES OF MICHAEL C. COHEN

5

6
By: _____

7
MARGUERITE M. MALLOY
Attorneys for Plaintiff PAUL L. GUIDRY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

-23-

PLAINTIFF PAUL L. GUIDRY'S COMPLAINT